UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONSERVATION LAW FOUNDATION, INC., | ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )    CIVIL ACTION NO. 05-10487-NG <br> ) |
| MITT ROMNEY, in his Official Capacity as GOVERNOR OF MASSACHUSETTS, et al., | ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

**STATE DEFENDANTS' MEMORANDUM IN SUPPORT OF
PARTIAL MOTION TO DISMISS**

      The plaintiff's 20-count Clean Air Act suit seeks extensive judicial intervention into the Commonwealth's public transportation policy. While the plaintiff alleges a supposedly poor state record in completing certain mass transit projects, the State Defendants'[1] evidence at trial will show that the Commonwealth in fact has completed the large majority of those projects, that its overall ozone levels have improved considerably since the early 1990's, and that the air quality impacts of most of the remaining transit projects is relatively minor compared to the benefits already achieved. The evidence indeed will show that despite its Clean Air Act title, this case is in fact about transportation and land use policy rather than air pollution, with the suit serving as a litigation tool to further specific projects desired by particular constituencies (and at

---

[1] The State Defendants are the defendants Mitt Romney, in his official capacity as Governor of Massachusetts; Douglas I. Foy, in his official capacities as Secretary of the Office for Commonwealth Development and Chairman of the Commonwealth Development Coordinating Council; Daniel Grabauskas, in his official capacity as Secretary of the Executive Office of Transportation; John Cogliano, in his official capacity as Commissioner of the Massachusetts Highway Department; and Robert W. Golledge, in his official capacity as Commissioner of the Department of Environmental Protection.

times strongly opposed by others, even within the same neighborhood[2]). Regardless of the specific further projects that end up being chosen, the evidence will show that the overall air quality benefits will not be impaired.

Against this more general backdrop, the State Defendants currently seek to dismiss nine of the plaintiff's claims because of specific legal deficiencies. Two claims (Counts 5 and 6) fail because they attempt to enforce deadlines that will not come due for many years from now, and the Clean Air Act does not recognize citizen suits for "prospective" or "anticipatory" violations. Another seven (Counts 1 and 7-12) try to enforce state administrative orders that, as the Complaint's own exhibits make clear, have been superceded with more recent state orders containing different terms and conditions. None of the superceded orders were subject to approval by the Environmental Protection Agency, and they are state rather than federal in nature. As a result, the Commonwealth's Department of Environmental Protection ("DEP") is free to alter or replace them, which it has in fact done for those at issue in Counts 1 and 7-12. For these reasons and the others set forth below, the Court should dismiss Counts 1 and 5-12.

## I.   RELEVANT BACKGROUND

### A.   The Clean Air Act and Its Citizen Suit Provision

The Clean Air Act establishes a "bold experiment in cooperative Federalism" to combat pollution of the nation's air resources. Connecticut v. EPA, 696 F.2d 147, 151 (2d Cir. 1982). Since 1970, the fundamental design of the program has remained the same. EPA establishes national ambient air quality standards (NAAQS) for select pollutants, 42 U.S.C. § 7409, and

---

[2]   For example, the evidence will show that Jamaica Plain is sharply divided over whether streetcar service should be restored to the Arborway Line or the current 60-foot compressed natural gas bus service should be retained. See Complaint Exh. 6, p. 6.

designates areas of the country that do not meet those standards, 42 U.S.C. § 7407. Each State in turn must develop and implement a plan, commonly referred to as a State Implementation Plan or "SIP," to attain the NAAQS. 42 U.S.C. § 7410. "A SIP is subject to approval by the EPA," and "'once adopted by a state and approved by the EPA, [it] becomes controlling and must be carried out by the state.'" Bayview Hunters v. Metro. Trans. Comm'n, 366 F.3d 692, 695 (9th Cir. 2004) (quoting Friends of the Earth v. Carey, 535 F.2d 165, 169 (2nd Cir. 1976)). Massachusetts has an EPA-approved SIP in effect. 40 C.F.R. §§ 52.1119-69.

"Approved SIPs are enforceable by either the State, the EPA, or . . . citizen suits brought under Section 304(a) of the [Clean Air Act, 42 U.S.C. § 7604(a)]." Bayview, 366 F.3d at 695. The plaintiff attempts to invoke the last of those three options, citing the citizen suit statute as the jurisdictional basis for its action. Complaint ¶ 23. Section 7604(a) provides in pertinent part:

> [A]ny person may commence a civil action on his own behalf --
>
> (1)     against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation.

42 U.S.C. § 7604(a). The quoted language thus contemplates two bases for suit that are relevant here: violation of "an emission standard or limitation under this chapter," id. § 7604(a)(1)(A), or violation of "an order issued by . . . a state with respect to such a standard or limitation," id.

§ 7604(a)(1) (B).  As regards the first provision, the statute defines "emission standard or limitation" at some length:

> For purposes of this section, the term "emission standard or limitation under this chapter" means --
>
> (1)   a schedule or timetable of compliance, emission limitation, standard of performance or emission standard,
>
>        . . .
>
> (3)   . . . any condition or requirement under an applicable implementation plan relating to transportation control measures, . . . or
>
> (4)   any other standard, limitation, or schedule established under any permit issued . . . under any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations . . .
>
> which is in effect under this chapter . . . or under an applicable implementation plan.

42 U.S.C. § 7604(f).

The phrase "emission standard or limitation" has received extensive judicial construction as well.  In particular, there "appears to be considerable support for the proposition that the [related statutory] language 'in effect under this chapter' limits the citizen suit provision 'to suits against . . . government actors that fail to comply with the specific requirements of a state or EPA implementation plan.'"  Cate v. Transcontinental Gas Pipe Line Corp., 904 F. Supp. 526, 533 (W.D. Va. 1995) (quoting Conservation Law Found. v. Fed. Highway Admin., 24 F.3d 1465, 1477 (1st Cir. 1994)).  As a result, an asserted requirement that fails to appear in the actual text of a SIP is not an actionable "emission standard or limitation."  Id. at 533-35; accord Bayview, 366 F.3d at 703-04; Sierra Club v. Larson, 2 F.3d at 462, 469-70; Friends of the Earth,

535 F.2d at 176.[3]   Since "approval by EPA or inclusion in a state SIP are the outer boundaries of the meaning of 'in effect under' the [Clean Air] Act," Cate, 904 F. Supp. at 533, a bright-line requirement for a citizen suit under Section 7604(a)(1)'s "emission standard or limitation" prong is inclusion of the particular "standard or limitation" in the text of the SIP.[4]

In addition, it is "well-established" that even when a provision does appear in a SIP, the "courts may only enforce specific SIP strategies, and may not enforce [the] SIP's overall objectives or aspirational goals." Bayview, 366 F.3d at 701. "[T]hese cases restrict the use of § 7604 to violations of 'objective evidentiary standards' and avoid suits requiring a 'reanalysis of technological or other considerations at the enforcement stage.'" Conservation Law Found., 24 F.3d at 1478.[5]   For example, "suits can be brought to enforce specific measures, strategies, or commitments designed to ensure compliance with the NAAQS, but not to enforce the NAAQS directly." Conservation Law Found. v. Busey, 79 F.3d 1250, 1258 (1st Cir. 1996). Goals or targets are unenforceable as well, even when phrased in numerical terms. Bayview, 366 F.3d at 701 (SIP goal of 15 % increase in mass transit ridership cannot be enforced).

As previously noted, Section 7604(a)(1) allows a citizen suit not only for violation of an "emission standard or limitation," 42 U.S.C. § 7604(a)(1)(A), but also for a violation of "an

---

[3]   An exception to this rule exists, sensibly enough, for a requirement that appears not in the text of a SIP but instead in the language of the Clean Air Act itself. Conservation Law Found., 24 F.3d at 1477-78.  None of the plaintiff's claims proceed on that basis.

[4]   Whether a particular provision actually appears in a SIP "is properly characterized as a question of law." Id. at 537 n. 11; accord Cal. Pub. Interest Research Group v. Shell Oil Co., 840 F. Supp. 712, 716 n. 8 (N.D. Cal. 1993).  This follows logically from the fact that each state's SIP is set forth in the Code of Federal Regulations or, for recent amendments, the Federal Register.  See, e.g., 40 C.F.R. §§ 52.1119-69 (Massachusetts SIP).

[5]   This "avoids . . . overburdening the courts" with highly technical scientific issues. Wilder v. Thomas, 854 F.2d 605, 613-14 (2nd Cir. 1988).

order issued by . . . a state with respect to such a standard or limitation," id. § 7604(a)(1)(B). This latter provision generally permits suit to enforce a state order "issued . . . with respect to" a SIP "standard or limitation," even if the order does not itself appear in the SIP.[6] Two pertinent limitations exist here, however. First, separate language in Section 7604(a) permits a citizen suit against a state only "to the extent permitted by the Eleventh Amendment to the Constitution." 42 U.S.C. § 7604(a)(1). The statute thus expressly adopts the Eleventh Amendment's restrictions on suit against state entities, including the familiar rule that "[a] federal court may not order state officials to conform their behavior to state law." Quintero de Quintero v. Aponte-Roque, 974 F.2d 226 (1st Cir. 1992).[7] Second, to be enforceable against any entity, the state order by definition must be currently in effect -- i.e., it must not be superseded by a subsequent state order that supplants it. See Council of Commuter Orgs. v. Metro. Transp. Auth., 683 F.2d 663, 668-69 (2nd Cir. 1982) ("[T]o maintain a citizen suit under § 7604(a) plaintiff must allege a violation of an applicable implementation plan"; superseded SIP provisions do not suffice) (emphasis in original). As regards supersession, state orders that relate to a SIP's provisions but lie outside of it differ fundamentally from the SIP provisions themselves: while the EPA clearly must approve any changes to the SIP before they can take effect, see, e.g., Bayview, 366 F.3d at

---

[6]   For example, a citizen suit clearly would lie against a private polluter for violating a state order issued with respect to a SIP-based "emission standard or limitation." In this regard, the State Defendants do not dispute that the terms and conditions in a state-issued permit can constitute a state "order" within the meaning of Section 7604(a)(1)(B), with the result that a private polluter can be subject to a citizen suit for violating them.

[7]   In short, the Clean Air Act does not abrogate the Eleventh Amendment; it instead explicitly incorporates that constitutional mandate. Id. The present motion does not itself rely upon the Eleventh Amendment as a ground for dismissing claims based on state orders that have not been incorporated into the Massachusetts SIP and that therefore exist only as a matter of state law. The State Defendants may make this argument later in the case, however, and they reserve all rights with respect to it.

695, no similar requirement of EPA approval exists for revisions of state orders that lie outside of the SIP (and that accordingly never received EPA approval in the first instance). Consistent with the "cooperative federalism" that underlies the Clean Air Act, Connecticut v. EPA, 696 F.2d at 151, as well as with the basic concept of state sovereignty inherent in our constitutional structure, see, e.g., Alden v. Maine, 527 U.S. 706, 712 (1999) (the Constitution "specifically recognizes the states as sovereign entities"), states retain plenary authority to revise their own orders that they have issued in their capacities as states.[8]

    B.    **The Massachusetts State Implementation Plan**

The Massachusetts SIP is a lengthy document, set forth in its entirety at 40 C.F.R. §§ 52.1119-69. Two provisions are pertinent here. First, the SIP incorporates by reference a state regulation, appearing at 310 C.M.R. § 7.36 and entitled "Transit System Improvements," that the plaintiff refers to as the "Transit Regulation." 40 C.F.R. § 52.1120(c)(101)(i)(B); Complaint ¶ 40, Exh. 5 (reproducing Section 7.36 in full). The Transit Regulation lists particular "Transit System Improvement Projects" that the defendant Secretary of Transportation must either complete by a specified date, 310 C.M.R. §§ 7.36(2)-(3), or provide a substitute project for in compliance with certain specific requirements, id. §§ 7.36(4). Two of the listed projects are relevant to the present motion:

---

[8]     To be sure, Congress in many circumstances can circumscribe a state's authority, in this respect as well as others. However, respect for state sovereignty requires, as a threshold matter, a "clear statement" of Congressional intent to do so. See, e.g., Gregory v. Ashcroft, 501 U.S. 452, 460-61 (1991). Here Congress has clearly stated that the SIP's themselves are subject to federal approval, 42 U.S.C. § 7410, but it has not done the same for state orders issued with respect to the SIP's.

> (2)     Transit System Improvement Projects.  EOTC shall plan and construct and render available for public use, transit system improvement projects including the following projects in accordance with the schedules set forth in this section:
>
>   . . .
>
> (h)     Before December 31, 2011 construction of the following facilities shall be completed and shall be opened to full public use:
>
>   1.   Green Line extension to Ball Square/Tufts University
>
>   2.   Blue Line connection from Bowdoin Station to the Red Line at Charles Station.

310 C.M.R. § 7.36(2)(h).  Section 7.36(3) then allows these deadlines to be extended for an additional three years (i.e., until December 31, 2014), with a substitute project required only for delays that exceed that amount, see id. § 7.36(3)(c).  The Transit Regulation also speaks only in terms of the ultimate completion date; it contains no additional requirements that any particular interim steps or "milestones" be accomplished between now and then.  See id. § 7.36(3).

The second relevant SIP provision incorporates by reference a state regulation, appearing at 310 C.M.R. § 7.38 and entitled "Certification of Tunnel Ventilation Systems in the Metropolitan Boston Air Pollution Control District," that is often referred to as the "Vent Stack Regulation."  40 C.F.R. § 52.1120(c)(96)(i)(B); Complaint ¶ 36, Exh. 5 (reproducing Section 7.38 in full).  In notable contrast to the Transit Regulation, the Vent Stack Regulation does not itself list specific transportation projects and completion dates; the relevant section indeed does not reference mass transit at all.  310 C.M.R. § 7.38(2).  The Vent Stack Regulation instead requires the builders of certain highway tunnel ventilation systems to make a "preconstruction certification" to DEP that the ventilation system and surrounding "roadway network" meet certain specified air quality standards.  Id. § 7.38(2)(a).  DEP is then to accept or reject the

certification, with the power to "impose such conditions on any acceptance of a certification . . . as it deems are necessary to meet the [previously listed air quality standards]." Id. § 7.38(2)(b).[9]

### C.   Related Massachusetts Administrative Orders

The Vent Stack Regulation explicitly subjects the Central Artery/Tunnel Project to its requirements. 310 C.M.R. § 7.38(1). On July 8, 1991, DEP issued a letter accepting a preconstruction certification for that project and attaching certain conditions pursuant to its authority under 310 C.M.R. § 7.38(2)(b). Complaint ¶ 38, Exh. 3.[10] That acceptance letter, referred to by the plaintiff as the "Vent Stack Permit," does list certain transportation projects (with due dates) that the Commonwealth must either complete or provide an adequate alternative for. Complaint Exh. 3, pp. 2-4.[11] While some of the listed projects overlap with the Transit Regulation's, others do not, such as the condition that the Commonwealth "[a]dd rolling stock on the MBTA . . . Orange Line[ ]by December 31, 1995 (at least . . . 46 cars on the Orange Line)." Id. p. 3. The projects that appear only in the Vent Stack Permit -- in contrast to those listed in

---

[9]   The First Circuit has recognized that the Vent Stack Regulation was "a step that the state need not [have] taken at all" -- i.e., it was not something the Environmental Protection Agency could have required under the Clean Air Act and instead was wholly optional on the Commonwealth's part. Sierra Club, 2 F.3d at 470.

[10]  The Court properly may consider attachments to a complaint when ruling on a motion to dismiss. See, e.g., Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2nd Cir. 1991).

[11]  As noted in fn. 6 supra, the State Defendants do not dispute that the terms and conditions of a state-issued permit that are currently in effect can constitute a state "order" within the meaning of Section 7604(a)(1)(B).

the Transit Regulation as well -- are not part of the SIP, because the Vent Stack Permit itself is not incorporated into the SIP.[12]

Nine years later, DEP accepted an amended preconstruction certification for the Central Artery/Tunnel Project, again attaching numerous conditions. Complaint ¶ 39, Exh. 4. This "Amended Vent Stack Permit," like the original one, is not itself part of the SIP. See 40 C.F.R. § 52.1120(c)(96)(i). Its provisions also supersede many components of the original Permit. For example, the Amended Permit extends some of the project completion dates listed in the original Permit, such as enlarging the deadline for adding 46 Orange Line cars from December 31, 1995 to December 31, 2000. Complaint Exh. 4, p. 4.

The Amended Vent Stack Permit also explicitly incorporates by reference, Complaint Exh. 4, p. 1, a concurrently executed Adminstrative Consent Order ("ACO") between DEP and the Commonwealth's Executive Office of Transportation ("EOT"). See Complaint Exh. 6 (attaching full copy). The incorporated ACO, which like the Permits is not part of the SIP, see 40 C.F.R. § 52.1120, further modifies the provisions of both the original Vent Stack Permit and the Amended Vent Stack Permit. In particular, the Amended Permit specifies that for "measure[s that] will not be completed by the required due date as listed" in the Amended Permit, "[r]equirements for substitution and/or offsets, as applicable, . . . are contained in the

---

[12]   The Massachusetts SIP is explicit as to which documents it "[i]ncorporat[es] by reference." See, e.g., 40 C.F.R. § 52.1120(c)(96)(i). This provides an easily administered, bright-line test for inclusion in the SIP. If the Code of Federal Regulations explicitly states that a particular document is "[i]ncorporated by reference," it is part of the SIP; if the federal regulation does not explicitly incorporate it, it is not so included. Here the SIP clearly incorporates the Vent Stack Regulation, id., but it does not similarly incorporate the Vent Stack Permit.

-10-

September 1, 2000 Consent Order." Complaint Exh. 4, p. 4 n. 2.[13]  Thus, for example, the ACO

replaces the "46 Orange Line cars" condition with a new condition and a new deadline:

> EOTC shall implement the following projects and commitments according to the schedules below . . . .
>
>      . . .
>
> •    Implement signal improvements on the Orange Line and provide 18 additional Orange Line cars to increase capacity by December 31, 2004. EOTC agrees to submit an analysis demonstrating that this project will achieve equivalent VMT [vehicle miles traveled] benefits as providing 46 additional cars on the Orange Line . . . .

Id. pp. 6, 8.  The ACO thus replaces the original condition of 46 new cars with a new condition of 18 new cars and trackside signal improvements (to improve train travel times).

Most recently, DEP and EOT executed a January 26, 2005 Amended Administrative Consent Order (2nd Amended ACO)[14] that further revises the required transit projects and their due dates.  Complaint Exh. 8 (attaching full copy).  For example, the 2nd Amended ACO replaces the condition requiring 18 new Orange Line cars with both (1) a new condition and schedule relating to a longer-term upgrade of the entire Orange Line fleet (with 18 more cars than there are now) and (2) an interim mitigation project requiring the purchase of 85 new Emission Controlled Diesel ("ECD") buses to replace the MBTA's 85 oldest diesel buses.  Id.

---

[13]    Because the Amended Vent Stack Permit incorporates by reference the ACO's provisions, Complaint Exh. 4 p. 1; see also id. p. 4 n. 2, those provisions are in reality part of not only the ACO but also the Amended Permit itself.  The plaintiff, however, disavows the ACO's and bases its Vent Stack Permit claims solely on the provisions within the four corners of the Permits themselves.  Complaint ¶¶ 45, 48.

[14]    The same parties also executed a 1st Amended ACO in 2002 that is not relevant here.  See Complaint Exh. 7.

pp. 8-9; see also id. p. 4.  Like the original ACO and both Vent Stack Permits, the 2nd Amended ACO is not part of the SIP.  See 40 C.F.R. § 52.1120.

### D. The Claims in the Plaintiff's Complaint

The Complaint contains 20 separate counts.  Complaint ¶¶ 50-154.  For purposes of the present motion, they can be grouped into four categories:

(1)  Counts 2 and 4-6 allege violations of requirements that appear in both the Transit Regulation and the Vent Stack Permit.  Id. ¶¶ 55-59, 65-83.  Two of these four counts (Counts 5 and 6) assert "anticipatory" violations of deadlines that will not come due until at least 2011: the extension of the Green Line to Tufts University in Medford and the extension of the Blue Line to the Red Line's Charles Street Station ("Red-Blue Connector").  Id. ¶¶ 70-83.  The State Defendants are moving to dismiss these two claims on the ground that the Clean Air Act does not provide for citizen suits based upon purely "prospective" violations.  See Section II infra.

(2)  Counts 1 and 7-12 allege violations of requirements that appear only in the original and/or Amended Vent Stack Permit -- i.e., they rely exclusively upon state orders that are not part of the SIP.  See Complaint ¶¶ 50-54, 84-123.  The State Defendants are moving to dismiss these claims on the ground that other state orders (specifically, the ACO's) have superceded the provisions in the two Permits that the plaintiff relies upon.  See Section III infra.

(3)  Counts 13-15 allege violations of Transit Regulation requirements only.  Complaint ¶¶ 124-37.  The present Motion does not address these claims.

(4)  Finally, Counts 16-20 assert, expressly "[i]n the alternative," violations of requirements that appear in the ACO.  Complaint ¶¶ 138-54.  The present Motion does not address these claims either.

### II. THE PLAINTIFF CANNOT MAINTAIN A CITIZEN SUIT UNDER THE CLEAN AIR ACT FOR ALLEGED "ANTCIPATORY" VIOLATIONS OF DEADLINES THAT HAVE YET TO PASS (COUNTS 5-6).

Counts 5 and 6 of the Complaint claim that the State Defendants are violating two deadlines -- for the Green Line extension to Medford and the Red-Blue Connector -- that will not come to pass until the end of 2011 at the earliest, i.e., for more than six years. Complaint ¶¶ 70-76.[15] Because the deadlines for full completion of these projects are the only actual deadlines in either the Transit Regulation or the Vent Stack Permit, and because those dates obviously are not upon us yet, the plaintiff asserts that "by necessary implication" the final-completion deadlines include "all the conditions precedent to ensure that such obligations [are] met." Id. ¶¶ 72, 79. However, the Clean Air Act does not allow suits over hypothetical requirements derived from "implication" or extrapolation; it instead permits actions only to enforce specific requirements expressly set forth in the SIP.[16]

As previously described, the Clean Air Act "limits the citizen suit provision 'to suits against . . . government actors that fail to comply with the specific requirements of a state or EPA implementation plan.'" Cate, 904 F. Supp. at 533 (emphasis added) (quoting Conservation Law Found., 24 F.3d 1465 at 1477); accord Wilder, 854 F.2d at 613-14; Council of Commuter

---

[15] The Amended Vent Stack Permit's current final completion date for both projects is December 31, 2011. Id. Exh. 4, p. 4. For the reasons set forth in Section IB supra, the projects' actual "final" completion dates under the Transit Regulation are three years later, or December 31, 2014. 310 C.M.R. §§ 7.36(2)-(3). Neither the Amended Vent Stack Permit nor the Transit Regulation set forth any additional interim or "milestone" dates.

[16] As previously noted, the Vent Stack Permit is not itself part of the Massachusetts SIP. 40 C.F.R. § 52.1120. While its terms and conditions that are currently in effect may be enforceable as a state "order" under 42 U.S.C. § 7604(a)(1)(B), the same rules that govern claims regarding actual SIP provisions, such as the one stressed in this Section II, necessarily must apply to the enforcement of subsidiary state orders issued "with respect to" them.

Orgs., 683 F.2d at 670.  As a result, "an obligation cannot be imposed based upon a SIP if that obligation was not actually undertaken in the SIP."  Bayview, 366 F.3d at 698.  This means that "the Court is not at liberty to extrapolate from the Plan or flesh out strategies not expressly contained therein," even when they "may seem to logically flow from it."  Citizens for a Better Env. v. Deukmejian, 731 F. Supp. 1448, 1459 (N.D. Cal. 1990).

Applying these principles to the Massachusetts SIP, the First Circuit has rejected a citizen suit claim when the language of the SIP provision at issue, former 310 C.M.R. § 7.02, did not expressly impose the requirement asserted.  Sierra Club, 2 F.3d at 469-70 ("Such systems do not fall within the list of specifically named facilities in the regulation.").  The Second Circuit has similarly dismissed a claim that did not have clear textual support in the relevant SIP:

> The stabilization of transit fares is not an expressed strategy of the Plan as adopted by the State, accepted by the E.P.A., and upheld by this court.  As a result, the fare increase is not an overt violation of [the citizen suit statute] and we lack subject matter jurisdiction to review the propriety of the [transit authority's] action.

Friends of the Earth, 535 F.2d at 176 (citations omitted).  Most recently, the Ninth Circuit also refused to impose an obligation that did not explicitly appear in the "plain language" of a SIP, Bayview, 366 F.3d at 698-99, specifically rejecting a claim that the relevant documents "implied" such a requirement, id. at 701.

Consistent with these rulings, research has not uncovered any decision holding that a purely anticipatory suit can be maintained when the SIP provides only a final deadline for full completion, with no intermediate steps or milestones also set forth.  To the contrary, the District Court for the District of New Jersey noted with apparent approval the plaintiffs' reluctance there to assert claims based on SIP deadlines that had not yet run.  Amer. Lung Ass'n v. Kean, 670 F. Supp. 1285, 1289 (D.N.J. 1987) ("because alleged implementation deadlines for each of the

[SIP] strategies except state II vapor controls do not run until December 31, 1987, plaintiffs at this time claim liability based on [only] the following alleged failures [already passed deadlines then listed]"). Even the District Court in Bayview, which in general took a very broad (and ultimately reversed) view of the citizen suit statute, declined to impose intermediate milestones not explicitly set forth in the SIP:

> The Court agrees with Plaintffs that MTC would be well-advised to set interim ridership milestones to be achieved by 2004 and 2005. However, [the SIP] only requires that a 15 % increase be achieved and does not provide any timetable by which that increase must be incrementally achieved. . . . In other words, intermediate milestones are not required to comply with [the SIP], and the Court therefore does not include them in this remedial order.

Bayview Hunters Point Comm. v. Metro. Transp. Auth., 212 F. Supp. 2d 1156, 1169 n. 17 (N.D. Cal. 2002), rev'd on other grounds, 366 F.2d 692 (9th Cir. 2004).[17]

Here too, no "interim . . . milestone[ ]" dates exist, and there accordingly is no current violation of an actual SIP provision to base liability upon. While the plaintiff contends that such milestones can arise by "implication," Complaint ¶¶ 72, 79, the case law does not recognize implied requirements, instead demanding that a plaintiff demonstrate a "specific requirement" in a SIP's text. See, e.g., Cate, 904 F. Supp. at 533. The Massachusetts SIP simply does not contain the requirements asserted here.

Tacitly recognizing this fact, the plaintiff also alleges that it is "impossible" for the two projects at issue to be completed within the next six years. Complaint ¶¶ 74, 81. However, research has uncovered no case holding that such a theory of liability can prevail, and it too runs

---

[17] Along the same lines, an early Sixth Circuit decision allowed a claim "at the first instance where the owner or operator of polluting equipment fails to meet a level prescribed in a schedule or timetable of compliance," but necessarily implied that a suit would not be available where such an explicit "schedule or timetable" did not exist. Commonwealth v. Ruckelshaus, 497 F.2d 1172, 1175 (6th Cir. 1974).

directly counter to the settled rule that actual violations of specific SIP provisions must exist. See, e.g., Wilder, 854 F.2d at 613-14. Moreover, even if such an "impossibility" theory were otherwise actionable, the actual SIP requirement is not that the specific projects be built, but instead that either they be built or an adequate substitute be provided for them. 310 C.M.R. §§ 7.36(3)-(4). The plaintiff does not and cannot allege that both alternatives are "impossible" to achieve within the relevant time period. See Complaint ¶¶ 74, 81.[18] For all of these reasons, the plaintiff's "anticipatory" claims cannot prevail.

### III. THE PLAINTIFF ALSO CANNOT MAINTAIN A CLEAN AIR ACT CLAIM FOR VIOLATION OF WHOLLY STATE (I.E., NOT EPA-APPROVED) ORDERS THAT NO LONGER ARE IN EFFECT.

Although the Complaint refers to the provisions of the Transit Regulation and the Vent Stack Permits as if they were interchangeable, a fundamental distinction exists between them. EPA has specifically approved the incorporation of the Transit Regulation into the SIP, 40 C.F.R. § 52.1120(c)(101)(i)(B), and it accordingly must approve any revision of it for Clean Air Act purposes. See, e.g., Bayview, 366 F.3d at 695. While DEP can change the Transit Regulation as a matter of state law and can request EPA to make a corresponding change to the SIP, it cannot itself alter the Transit Regulation as a matter of federal law unless and until EPA agrees. See, e.g., Bayview, 366 F.3d at 695. On the other hand, the original and Amended Vent

---

[18] In this regard, as previously noted, only the Transit Regulation is actually part of the SIP, 40 C.F.R. § 52.1120(c), and its final deadline is not 2011 but instead 2014. 310 C.M.R. §§ 7.36(2)-(3). The plaintiff makes no allegation that it would be "impossible" either to build the project or to provide an adequate substitute within the next nine years; it indeed makes no claim that it would be impossible to do so even within the next six.


Stack Permits are not part of the SIP, and they are not subject to EPA approval.[19]  They instead exist wholly as a matter of state law, with DEP free to change their provisions at any time in the exercise of its state law powers.  See Section IA supra.

Here DEP's original and Second Amended ACO's in fact have changed -- indeed superseded and replaced -- all of the provisions in the original and Amended Vent Stack Permits that the plaintiff relies upon to support its claims in Counts 1 and 7-12.  For example, Count 1 asserts a violation of the Amended Permit's requirement that 46 Orange Line cars be added by December 31, 2000, Complaint ¶¶ 50-54, but DEP has entirely revamped that provision, most recently replacing it with requirements to purchase 85 ECD buses and to enlarge the upgrade of the Orange Line fleet as a whole.  Id. Exh. 8, pp. 8-9.[20]  The same ACO provisions dispose of the related claim in Count 9 regarding the 46 Orange Line cars, see Complaint ¶¶ 99-104, and separate terms in the two Consent Orders similarly supersede the provisions in the original and Amended Vent Stack Permits that underlie Counts 7-8 and 10-12.[21]

---

[19]    As previously noted, the Vent State Regulation is part of the SIP, 40 C.F.R. § 52.1120(c)(96)(i)(B), but the Permits are not.  The State Defendants recognize that a state-issued permit could become part of a SIP if specifically incorporated by the EPA and thereby could become an "emission standard or limitation," see fn. 22 infra; their point is simply that the EPA has not so incorporated either of the Vent Stack Permits here.

[20]    It is well settled that in resolving a motion to dismiss the actual terms of an attachment to a complaint control over the pleading's characterizations of it.  See, e.g., Dames & Moore v. Baxter & Woodman, Inc., 21 F. Supp. 2d 817, 823 (N.D. Ill. 1998); Honess 52 Corp. v. Town of Fishkill, 1 F. Supp. 2d 294, 300 (S.D.N.Y. 1998).

[21]    Specifically, Section IV8A of the ACO, Complaint Exh. 6, p. 7, and Sections II3 and II7A of the 2nd Amended ACO, id. Exh. 8, pp. 1-3, defeat the claims in Counts 7 and 8 relating to alleged delay in and lack of resulting mitigation for the Silver Line's Washington Street Replacement Service and South Boston Transitway.  See Complaint ¶¶ 84-98.  Similarly, Sections IV10-11 and 13 of the ACO, Complaint Exh. 6, pp. 9-10, and Sections II7C and III7C1 of the 2nd Amended ACO, id. Exh. 8, pp. 4-5, 8, 10, resolve Count 10's claims relating to alleged delay in and lack of resulting mitigation for the Blue Line Platform Lengthening project.

This supersession by the same Massachusetts agency that issued the original orders is fatal to the plaintiff's reliance upon those now-defunct provisions. As set forth in Section II supra, an asserted requirement that fails to appear in the actual text of a SIP (or the text of the statute itself) is not an actionable "emission standard or limitation" under the Act's citizen suit provision, 42 U.S.C. § 7604(a)(1)(A). Cate, 904 F. Supp. at 533-35; accord Bayview, 366 F.3d at 703-04; Sierra Club v. Larson, 2 F.3d at 462, 469-70; Friends of the Earth, 535 F.2d at 176. While the statute separately allows claims based on "an order issued by . . . a state with respect to such a standard or limitation," 42 U.S.C. § 7604(a)(1)(B), that state order must remain currently in effect. See Council of Commuter Orgs., 683 F.2d at 668-69 (superseded SIP provisions cannot provide basis for suit). Here DEP has supplanted the state requirements that underlie Counts 1 and 7-12, and by definition the plaintiff cannot rely upon them. See id.[22]

---

See Complaint ¶¶ 105-11. Sections II16, III2, and IV11-12 of the ACO, Complaint Exh. 6, pp. 4-5 and 9-10, likewise dispose of Count 11's claim relating to alleged delay in and lack of resulting mitigation for the construction of the Greenbush Line. See Complaint ¶¶ 112-17. Finally, Section III2 of the ACO, Complaint Exh. 6, p. 5, and Sections II7D, IIID, and IIIF-G of the 2nd Amended ACO, id. Exh. 8, pp. 5 and 10-12, refute Count 12's claims relating to alleged delay in and lack of resulting mitigation for the Red-Blue Connector. See Complaint ¶¶ 118-23.

[22] The plaintiff cannot improve its lot by arguing that the Vent Stack Permits' terms and conditions qualify as "emission standard[s] or limitation[s]" under 42 U.S.C. § 7604(f)(4), see Section IA supra, and therefore are separately actionable under 42 U.S.C. § 7604(a)(1)(A). First, "approval by the EPA or inclusion in a state SIP are the outer boundaries" of "emission standard or limitation" status, Cate, 904 F. Supp. at 533, and the Permits have been neither approved by EPA nor included in the SIP. Their terms and provisions accordingly do not qualify as "emissions standard[s] or limitation[s]." Id. at 533-35; accord Bayview, 366 F.3d at 703-04; Sierra Club, 2 F.3d at 462, 469-70; Friends of the Earth, 535 F.2d at 176. Second, even if the Permits' terms and conditions could so qualify despite not being part of the SIP, the fact that they are not included in the SIP means that they still exist solely as a matter of state law and therefore are fully subject to revision by the state agency that issued them, for all of the reasons set forth in both Section IA supra and this Section III. Here the relevant Permit provisions have in fact been superseded, and they cannot provide the basis for suit regardless of how they are labeled.

Likely anticipating this argument, the Complaint asserts that the original and Amended Vent Stack Permits contain certain requirements for modifying their provisions in the event of a transit project's delay or potential replacement and that the ACO's did not comply with those requirements here. Complaint ¶¶ 42, 45-46.[23]  However, the Permits' procedural requirements are no more part of the SIP than any other provision in them is, and DEP retains full authority, as the state agency that issued these state executive orders, to alter or amend any component of them as it deems appropriate. DEP is free to determine, for example, that the specific circumstances before it do not warrant full adherence to the previously listed procedures and that a new requirement would sufficiently serve both air quality and the public interest. See, e.g., Complaint Exh. 8, pp. 8-9 (accepting purchase of 85 improved buses and enlarged upgrade of overall fleet as adequate substitute for Orange Line cars). DEP is fully empowered to amend the procedural as well as the substantive requirements of its existing state law orders, and its modification of the Vent Stack Permits' provisions here dooms all claims based upon them.

## IV.    CONCLUSION

---

[23] The Complaint also anticipates this argument by including five "alternative" claims (Counts 16-20) that seek to enforce certain requirements in the ACO's themselves (but only if, contrary to the plaintiff's primary claims here, the ACO's provisions are given effect). Complaint ¶¶ 138-54; see also id. ¶¶ 45, 48. While alternative allegations are certainly permissible, Fed. R. Civ. P. 8(e)(2), the plaintiff's reasoning in doing so here is flawed. The Complaint's specific phrasing is, "In the alternative, if the ACO, Amended ACO or Second Amended ACO operate to modify, change, or otherwise amend the Massachusetts SIP . . . ." Id. ¶ 139 (emphasis added). The State Defendants do not in fact contend that the ACO's modify the SIP. They instead assert that the Vent Stack Permits have never been part of the SIP at all and hence are not "emissions standards or limitations" under it, see, e.g., Cate, 904 F. Supp. at 533-35, and that in any event their residual status as state executive orders leaves them fully subject to change by the state agency that initially promulgated them.

For the foregoing reasons, the Court should allow State Defendants' Partial Motion to Dismiss and dismiss Counts 1 and 5-12 of the Complaint.

By their attorneys,

THOMAS F. REILLY
ATTORNEY GENERAL

| | |
|---|---|
|     /s/ Pierce O. Cray          <br>Pierce O. Cray, BBO # 104630<br>David Hadas, BBO # 641294<br>Assistant Attorneys General<br>Government Bureau<br>One Ashburton Place, Room 2019<br>Boston, MA 02108<br>(617) 727-2200 ext. 2084 | William L. Pardee, BBO # 389070<br>Assistant Attorney General<br>Environmental Protection Division<br>One Ashburton Place, Room 1813<br>Boston, MA 02108<br>(617) 727-2200 ext. 2419 |

Date: April 22, 2005